UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FIREGLASS,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>MODERUSTIC INC.,<br><br>　　　　　　　　　Defendant. | Case No.: 15-CV-2866 JLS (BGS)<br><br>**ORDER: (1) GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE, AND (2) DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 10) |

Presently before the Court is Defendant Moderustic Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1). (ECF No. 10.) Also before the Court are Plaintiff American Fireglass's Opposition to (ECF Nos. 12, 13[1]) and the Defendant's Reply in Support of (ECF No. 14) the MTD, as well as Plaintiff's Request for Judicial Notice (RJN, ECF No. 12-15). The Court vacated the hearing and took this matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 16.) Having considered the parties' arguments and the law, the Court **GRANTS** Plaintiff's RJN (ECF No. 12-15) and **DENIES** Defendant's MTD (ECF No. 10).

---

[1] Plaintiff belatedly filed the Declaration of Charles F. Reidelbach (ECF No. 13-1) due to its inadvertent omission from Plaintiff's timely-filed opposition brief and other supporting documents. (*See* ECF No. 13 at 1.) Defendant did not object. (*Id.*)

# BACKGROUND

Since 2005, Plaintiff has manufactured and sold pieces of broken tempered glass for use in fireplaces and fire pits. (Compl. ¶¶ 1, 9, ECF No. 1; *see also* Decl. of Matt Doll (Doll Decl.) ¶ 2, ECF No. 12-1.) Defendant is Plaintiff's competitor and also sells fireplace and fire pit glass. (Compl. ¶ 1, ECF No. 1; *see also* Doll Decl. ¶ 4, ECF No. 12-1.)

Defendant's founder, Ed Jaunzemis, filed a patent application seeking to patent a process related to tumbled, polished, vibrated broken tempered glass pieces in 2005. (Compl. ¶ 10, ECF No. 1; *see also* Decl. of Charles F. Reidelbach (Reidelbach Decl.) ¶ 2, ECF No. 13-1.) In 2011, the U.S. Patent and Trademark Office (PTO) issued U.S. Patent No. 7,976,360 (the '360 Patent). (*Id.*) After the '360 Patent issued, Plaintiff filed an *inter partes* review petition with the PTO. (*Id.*) In 2011, the PTO rejected all of the claims of the '360 Patent as obvious in light of prior art. (*Id.*) Defendant has appealed that ruling to the Federal Circuit. (*Id.*) Defendant has also filed other, related patent applications, one of which has been rejected and abandoned, and two of which are pending and awaiting reexamination. (*Id.*)

On July 11, 2011, while the '360 Patent was pending, Defendant filed another patent application which was granted, resulting in the issuance of U.S. Patent No. 8,419,505 (the '505 Patent) on April 16, 2013. (*Id.* at ¶ 11; *see also* MTD 3,[2] ECF No. 10; Reidelbach Decl. ¶ 3, ECF No. 13-1.) Defendant failed to disclose to the PTO during prosecution of the '505 Patent that the '360 Patent had been rejected based on prior art. (Reidelbach Decl. ¶ 3, ECF No. 13-1.) Plaintiff's counsel, Charles F. Reidelbach, even sent several letters to Defendant's attorney of record advising him and his client of their duty of candor and good faith in dealing with the PTO. (Reidelbach Decl. ¶ 4, ECF No. 13-1.)

The PTO issued an *ex parte* reexamination certificate of the '505 Patent on November 26, 2014, which narrowed the claims to include a method for creating smooth,

---

[2] Pin citations to docketed materials refer to the CM/ECF page numbers electronically stamped at the top of each page.

1  tempered glass pieces by placing the pieces into a tumbling apparatus and tumbling the
2  fragments for a pre-determined period of time such that the surfaces of the glass fragments
3  are smoother than prior to tumbling and have a substantially rounded, bead-like shape.
4  (Compl. ¶ 11, ECF No. 1; *see also* MTD 3, ECF No. 10; Reidelbach Decl. ¶ 4, ECF No.
5  13-1.)
6        On behalf of Defendant, Mr. Jaunzemis sent a series of emails to Plaintiff's dealers
7  in February 2015, attaching a copy of the '505 Patent and threatening to file a complaint
8  for patent infringement against Plaintiff's dealers. (Compl. ¶ 13(a), ECF No. 1; *see also*
9  Doll Decl. Ex. A, ECF No. 12-2; Doll Decl. Ex. B, ECF No. 12-3.) One email, for example,
10 noted "we [Defendant] are and have started enforcing our patent rights. You will or may
11 be notified by our legal team. Good luck with that. Let me know how that works out for
12 you." (Doll Decl. Ex. B at 7, ECF No. 12-3 at 3.) Plaintiff's dealers forwarded the emails
13 to Plaintiff. (*See* Doll Decl. Ex. A, ECF No. 12-2; Doll Decl. Ex. B, ECF No. 12-3.) Mr.
14 Jaunzemis claims that he was unaware that these companies were dealers of Plaintiff at the
15 time. (Reply Declaration of Edgar Jaunzemis (Jaunzemis Reply Decl.) ¶ 6), ECF No. 14-
16 1.)
17       In July 2015, Defendant filed a complaint for infringement of the '505 Patent against
18 various sellers of fireplace glass. (Compl. ¶ 13, ECF No. 1; *see also* Decl. of Edgar Edward
19 Jaunzemis (Jaunzemis Decl.) ¶ 4(b), ECF No. 10-1.) Since filing that initial lawsuit,
20 Defendant also has threatened repeatedly to sue Plaintiff and its dealers for infringement
21 of the '505 Patent. (Compl. ¶¶ 1, 13, ECF No. 1.)
22       In September 2015, for example, Plaintiff's CEO Matt Doll attended a convention
23 in Chicago, at which representatives from other companies informed him that Defendant
24 had sued or had threatened to sue their companies for patent infringement. (Doll Decl. ¶ 6,
25 ECF No. 12-1.)
26       In October 2015, Mr. Jaunzemis was interviewed for a newspaper article, which
27 reported that Mr. Jaunzemis intended to hire dozens of attorneys nationwide to sue a
28 multitude of companies for infringement of the '505 Patent. (*Id.* at ¶ 13(b); *see also* Doll

1  Decl. Ex. C, ECF No. 12-4.) Mr. Jaunzemis claims that he was not given the opportunity
2  to edit what was printed and contests the accuracy of the statements attributed to him.
3  (Jaunzemis Decl. ¶ 4, ECF No. 10-1.) Nevertheless, Defendant posted a copy of the article
4  on its website and circulated a link to the article to Plaintiff's dealers. (Doll. Decl. ¶ 7,
5  ECF No. 12-1; *see also* Doll Decl. Ex. D, ECF No. 12-5; Doll Decl. Exs. E–H, ECF Nos.
6  12-6–9.)

7  Also in October 2015, Mr. Jaunzemis sent a letter to Mr. Doll and his wife on behalf
8  of Defendant, threatening to sue Plaintiff's dealers. (Compl. ¶ 13(c), ECF No. 1; *see also*
9  Jaunzemis Decl. Ex. A, ECF No. 10-2; Doll Decl. ¶ 8, ECF No. 12-1; Doll Decl. Ex. I,
10 ECF No. 12-10.) The letter warned:

> Now for a reality check, most likely you will never be in court with your opponent. In a strategy session, I learned to divide and conquer from within. How many dealers do you have? How many dealers are in harm's way? What if 10 of your dealers get sued in 10 different states? . . . What if they lose? They will be looking for indemnification from you, can you afford that? . . . OK, now that the first ten get wiped out, then the onslaught of another 20? 30? 40? When will you get the message? How many suits can you afford? . . . At what cost will you concede? When you have won and have nothing left, what then?"

18 (Jaunzemis Decl. Ex. A, ECF No. 10-2 at 2; Doll Decl. Ex. I at 27, ECF No. 12-10 at 2;
19 *see also* Compl. ¶ 13(c), ECF No. 1; Doll Decl. ¶ 8, ECF No. 12-1.) Mr. Jaunzemis disputes
20 that this letter may be attributed to him. (Jaunzemis Decl. ¶ 5, ECF No. 10-1.) Although
21 the envelope shows a return address of 3050 Painfield [sic] Road, Kettering, OH 45432,
22 the letter was postmarked in Los Angeles area on October 1, 2015. (Jaunzemis Decl. Ex.
23 A, ECF No. 10-2 at 3; Doll Decl. Ex. I at 28, ECF No. 12-10 at 3.) Defendant is a California
24 corporation. (Compl. ¶ 4, ECF No. 1.) Another seller of fireglass products, Hearth
25 Products Controls Company, is located at 3050 Plainfield Road, Kettering, OH, but
26 representatives of that company have assured Mr. Doll that their company did not send the
27 letter. (Doll Decl. ¶ 8 & n.1, ECF No. 12-1.)
28 / / /

1       Finally, Mr. Jaunzemis sent a package to Plaintiff on behalf of Defendant in
2  December 2015, which enclosed copies of the '360 and '505 Patents and stated that
3  Plaintiff should consider the accompanying letter notice of Defendant's patent rights.
4  (Compl. ¶ 13(d), ECF No. 1; *see also* Doll Decl. ¶ 9, ECF No. 12-1; Doll Decl. Ex. J, ECF
5  No. 12-11.) The letter read:

> Happy Belated Birthday Matt!
>
> Sorry I missed your birthday, don't really know when it is, but o 'well [sic].
>
> I really wanted to send you a copy of our "360" Patent, but may not be able to do that until February or March of 2016 [after the Federal Circuit rules on the pending appeal]. But, as a consolation, I am sending you our "505" Patent. As soon as our "360" Patent is once again allowed (we are hoping) I will send you a frame able [sic] copy that you can frame and hang prominently in your office or showroom! Sorry about missing your birthday and have a festive holiday season.
>
> P.S. You can consider that this is a notice.  12 12 2016
>
> Ed Jaunzemis
> Moderustic Inc

19  (Jaunzemis Decl. Ex. B, ECF No. 10-3 at 2; Doll Decl. Ex. J at 29, ECF No. 12-11 at 2.)
20  The return address on the package was Mr. Doll's. (Doll Decl. ¶ 9, ECF No. 12-1; Doll
21  Decl. Ex. J at 30, ECF No. 12-11 at 3.)
22       On its website, moderustic.com, Defendant warns alleged infringers that "If you are
23  an 'Alleged Infringer' you may want to heed on [sic] this warning . . . **We at this time are**
24  **initiating our legal rights to assert and process [sic] our Patent Rights. The beginning**
25  **of our legal claims against alleged infringers begins now.**" (Doll Decl. Ex. K at 32, ECF
26  No. 12-12 at 2 (emphasis in original).) The warning continues: "**with great glee, pleasure,**
27  **ecstatic exuberance and a deep resounding sense of satisfaction we'd like our**
28  **competitors to know that you are ScrewED [sic]. Knock, Knock. Who's There?** *The*

*process servers are on their way. We will leave no stone unturned.*" (Doll Decl. Ex. K at 33, ECF No. 12-12 at 3 (emphasis in original).)

On December 18, 2015, Plaintiff filed its Complaint in this Court, seeking a declaratory judgment of patent invalidity or, alternatively, non-infringement. (Compl. ¶ 2, ECF No. 1.) The instant MTD followed on February 10, 2016. (*See generally* MTD, ECF No. 10.)

## REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Judicially noticed facts often consist of matters of public record." *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citation omitted); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (The court "may take judicial notice of court filings and other matters of public record."). While "[a] court may take judicial notice of the existence of matters of public record, such as a prior order or decision," it should not take notice of "the truth of the facts cited therein." *Marsh v. San Diego Cnty.*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).

Plaintiff asks the Court to judicially notice two facts in support of its Opposition: (1) "[t]he letter addressed to American Fireglass which is attached as **Exhibit I** to the accompanying declaration of Matt Doll and **Exhibit A** to the declaration of Edward Jaunzemis (Docket No. 10-1) was deposited with the United States Postal Service in the Los Angeles, California area on October 1, 2015" (RJN 1, ECF No. 12-15 (emphasis in original)); and (2) "Moderustic filed a complaint (**Attachment 2**, hereto) for infringement of U.S. Patent 8,419,505 on July 11, 2015 in the United States District Court for the Eastern District of Texas, Case No. 2:15-cv-01270-JRG-RSP, against sellers of fireplace glass" (*id.* at 2 (emphasis in original)).

/ / /

The Court concludes that both facts may be judicially noticed. *See, e.g.*, *Reyn's Pasta Bella*, 442 F.3d at 746 n.6 (judicially noticing pleadings, memoranda, and expert reports from another case); *Rubalcaba v. Gucci Am., Inc.*, No. CV-12-01503-PHX-GMS, 2012 WL 5205596, at *2 (D. Ariz. Oct. 22, 2012) (considering date of postmark in resolving motion to dismiss). Moreover, "[i]f a motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947); *Zunamon v. Brown*, 418 F.2d 883, 886 (8th Cir. 1969); 2A James W. Moore et al., *Moore's Federal Practice*, ¶ 12.07 (2d ed. 1987)). Accordingly, the Court **GRANTS** Plaintiff's RJN. (ECF No. 12-15.)

## MOTION TO DISMISS

### I. Legal Standard

"The burden of establishing jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citing *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990); *Reynolds*, 846 F.2d at 748). "If a Rule 12(b)(1) motion simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations—that is, the movant presents a 'facial' attack on the pleading—then those allegations are taken as true and construed in a light most favorable to the complainant." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); 2A James W. Moore et al., *Moore's Federal Practice* ¶ 12.07 (1993)).

"If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Id.* (citing *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558–59 (9th Cir. 1987); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1363, at 456–57 (1990)). "In such a case, the allegations

in the complaint are not controlling . . . , and only uncontroverted factual allegations are accepted as true for purposes of the motion." *Id.* at 1583–84 (citations omitted). "All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." *Id.* at 1584 (footnote omitted). "In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." *Id.* (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.), *cert. denied*, 493 U.S. 993 (1989); *Reynolds*, 846 F.2d at 747; *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883–84 (Fed. Cir. 1985), *cert. denied*, 479 U.S. 820 (1986)).

**II.   Analysis**

Defendant seeks dismissal of Plaintiff's Complaint because it "fails to meet both Article III's case or controversy requirement as defined in the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202[,] and the Patent Act's subject matter jurisdiction requirement under Section 1338." (MTD 6, ECF No. 10.) Defendant argues that "this Court lacks jurisdiction to hear this case under the Declaratory Judgment Act because a patentee's litigation history coupled with informal comments do not give rise to a judicial claim." (*Id.* at 7.) Plaintiff counters that "[Defendant]'s aggressive, repeated claims of patent infringement and its many threats to file complaints for infringement clearly satisfy the jurisdictional requirement . . . ." (Opp'n 8, ECF No. 12.)

Article III of the United States Constitution restricts federal judicial power to the adjudication of "Cases" or "Controversies." U.S. Const. art. III, § 2. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "The Declaratory Judgment Act's requirement of 'a case of actual controversy' simply affirms this [Article III] Constitutional requirement, having long been interpreted as referring to any case and controversy that is

justiciable under Article III." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937)). "Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012) (quoting *MedImmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1378 (Fed. Cir. 2005), *overruled on other grounds*, 549 U.S. at 130–31).

In deciding whether the case or controversy requirement is satisfied, a court must decide "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quotation omitted). "[T]he alleged injury at the root of most justiciable declaratory judgment controversies in the patent context is a restraint on the free exploitation of non-infringing goods, or an imminent threat of such restraint." *Prasco*, 537 F.3d at 1339 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Federal Circuit has recently clarified that "declaratory judgment jurisdiction exists 'where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license.'" *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009) (quoting *SanDisk Corp. v. STMicroelecs., Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007)). A number of factors are to be considered in this analysis, including the patentee's asserting the patent as relevant to the other party's specific product line, imposing a short deadline for a response, insisting the other party not file suit, failing to propose a confidentiality agreement, identification of other licensees, identification of specific claims, and a history of litigating in the industry. *Id.* at 1363, 1364 n.1. "[I]t is the objective words and actions of the patentee that are controlling." *Id.* at 1363 (quoting *BP Chems. v. Union Carbide Corp.*, 4 F.3d 975, 979 (Fed. Cir. 1993)).

Objectively viewing Defendants' correspondence with Plaintiff, the Court concludes that Plaintiff has adequately demonstrated a case or controversy to confer subject-matter jurisdiction. Although Mr. Jaunzemis claims not to have authored the October 2015 letter received by Mr. Doll (*see, e.g.*, Jaunzemis Decl. ¶ 5, ECF No. 10-1), the Court does not find Mr. Jaunzemis' declaration credible,[3] *see Cedars-Sinai*, 11 F.3d at 1584 ("[F]acts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court."); *see also Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (noting that where courts consider matters outside the pleadings on a Rule 12(b)(1) motion, they "resolve all disputes of fact in favor of the non-movant"), *as amended* (Feb. 4, 1997); *Cal. Trout, Inc. v. U.S. Bureau of Reclamation*, 115 F. Supp. 3d 1102, 1109 (C.D. Cal. 2015) ("In the absence of an evidentiary hearing, disputed facts relevant to subject matter jurisdiction are viewed in the light most favorable to the nonmoving party."). Although Defendants make much of the fact that "[t]he letter was sent from an address in Ohio, and bears no name or signature indicating that it was sent by Mr. Juanzemis [sic] or Moderustic or any of their affiliates" (MTD 4, ECF No. 10 (citing Jaunzemis Decl. Ex. A, ECF No. 10-2), the envelope bears a postmark indicating that the letter was actually posted from the Los Angeles-area (*see* Jaunzemis Decl. Ex. A, ECF No. 10-2 at 3; Doll Decl. Ex.

---

[3] The Court is concerned that Mr. Jaunzemis' declaration teeters on the fine line between simply incredible and perjurious. Perjury is defined in federal criminal law as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (citing 18 U.S.C. § 1621(1)). "There is no specific rule which discusses sanctions for perjury." *Arnold v. Cnty. of El Dorado*, No. 2:10-CV-3119 KJM GGH, 2012 WL 3276979, at *4 (E.D. Cal. Aug. 9, 2012). Consequently, "[c]ourts have struggled with the issue, but the better reasoned opinions permit a dismissal of the case of the party committing perjury." *Id.* at *1; *see also Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985) ("In this circuit, 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'") (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)) (citing *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802 (9th Cir. 1982)); *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 392 (E.D. Cal. 1992) (striking defendant's answer and entering default in favor of plaintiff where defendant had perjured himself). This is because "[t]here is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for any just result." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998).

I at 28, ECF No. 12-10 at 3).  A comparison between the October 2015 letter and December 2015 letter—which Mr. Jaunzemis does not dispute writing (Jaunzemis Decl. ¶ 6, ECF No. 10-1)—reveals additional similarities, including use of the same font, use of the phrase "'360' patent," and use of a false return address (*compare* Jaunzemis Decl. Ex. A, ECF No. 10-2, *and* Doll Decl. Ex. I, ECF No. 12-10, *with* Jaunzemis Decl. Ex. B, ECF No. 10-3, *and* Doll Decl. Ex. J, ECF No. 12-11).  Moreover, it appears that Mr. Jaunzemis has a history of being less than candid with adjudicative bodies.[4]  (*See, e.g.*, Opp'n 4, ECF No. 12; Reidelbach Decl. ¶¶ 3–4, ECF No. 13-1.)

Furthermore, October 2015 letter accuses Plaintiff of infringing the '360 Patent. (*See, e.g.*, Jaunzemis Decl. Ex. A, ECF No. 10-2 at 2 ("I have been watching your battle in trying to defeat the '360' patent. . . .  The premise of your company is built on someone else's idea/ patent (possibly) (you are not lying to yourself, are you?).  If the judge (on the appeal) rules in the favor of the '360' patent, all you have built will be lost, correct (that will suck)?").)  It also promises to "divide and conquer" by suing ten of Plaintiff's dealers in ten different states, followed by "the onslaught of another 20[,] 30[,] 40[.]" (*Id.*)  The purpose of these lawsuits, the letter explains, is to deplete Plaintiff's assets when its dealers seek indemnification.  (*See id.* ("How many suits can you afford? . . .  If you have a few

---

[4] The Court is also troubled by Plaintiff's allegations that Defendant breached his duty of candor to the PTO.  Such conduct may render the '505 Patent unenforceable, among other "far-reaching consequences." *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285–89 (Fed. Cir. 2011) ("Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent. . . . To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO. . . . [T]he remedy for inequitable conduct is the 'atomic bomb' of patent law. . . . Unlike validity defenses, which are claim specific . . . , inequitable conduct regarding any single claim renders the entire patent unenforceable. . . . Unlike other deficiencies, inequitable conduct cannot be cured by reissue . . . or reexamination . . . .  Moreover, the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and application in the same technology family. . . .  Thus, a finding of inequitable conduct may endanger a substantial portion of a company's patent portfolio.  A finding of inequitable conduct may also spawn antitrust and unfair competition claims. . . .  Further, prevailing on a claim of inequitable conduct often makes a case 'exceptional,' leading potentially to an award of attorneys' fees under 35 U.S.C. § 285. . . .  A finding of inequitable conduct may also prove the crime or fraud exception to the attorney-client privilege.") (citations omitted).

thousand dealers, can you with stand [sic] defending them from hundreds of cases? At what cost will you concede? When you have won and have nothing left, what then?").) Although the letter mentions only the '360 Patent, the lawsuit filed on July 11, 2015 in the Eastern District of Texas claimed infringement of the '505 Patent. (*See* RJN Attach. 2, ECF No. 12-17.) Especially when combined with Mr. Jaunzemis' October 2015 newspaper interview reporting that "he hopes to shut down competition" (*see* Doll Decl. Ex. C at 8, ECF No. 12-4 at 2), Defendant's publication of the article on its website (*see* Doll Decl. Ex. D, ECF No. 12-5), and Defendant's circulation of the article to Plaintiff's dealers (*see* Doll Decl. Exs. E–H, ECF. Nos. 12-6–9), "it was not unreasonable for [Plaintiff] to interpret [Defendant]'s letter[] as implicitly asserting its rights under the '[505] patent." *See Hewlett-Packard*, 587 F.3d at 1363.

With respect to the December 2015 letter, Defendant argues that that letter "was focused on the '360 Patent, not the '505 [P]atent." (*See, e.g.*, MTD 8, ECF No. 10; Jaunzemis Decl. ¶ 6, ECF No. 10-1; Jaunzemis Reply Decl. ¶ 12, ECF No. 14-1.) This argument defies logic, as the letter clearly references the '505 Patent: "I really wanted to send you a copy of our '360' Patent, but may not be able to do that until February or March of 2016 [when the Federal Circuit appeal has concluded]. But, as a consolation, I am sending you our '505' Patent. . . . [¶] P.S. You can consider that this is a notice. 12 12 2016[.]" (Jaunzemis Decl. Ex. B, ECF No. 10-3 at 2; Doll Decl. Ex. J at 29, ECF No. 12-11 at 2.) Mr. Jaunzemis enclosed copies of both the '360 and '505 Patents in the package accompanying the letter. (*See* Doll Decl. ¶ 9, ECF No. 12-1; Doll Decl. Ex. J at 30, ECF No. 12-11 at 3.) Clearly the December 2015 letter was focused on the '505 Patent, despite Mr. Jaunzemis' tortured attempt to recharacterize it otherwise.

As in *Hewlett-Packard*, "[t]he facts of this case, when viewed objectively and in totality, show that [Defendant] took the affirmative step of twice contacting [Plaintiff] directly, making an implied assertion of its rights under the '[505] patent against [Plaintiff]'s [fireglass] products, and [Plaintiff] disagreed." *See* 587 F.3d at 1364. The Court therefore concludes "that there is declaratory judgment jurisdiction arising from a

'definite and concrete' dispute between [Plaintiff] and [Defendant], parties having adverse legal interests." *See id.*

Defendant also argues that the Court has discretion in exercising jurisdiction over declaratory judgment actions (MTD 5–6, ECF No. 10), impliedly asking the Court not to exercise jurisdiction if it concludes—as it does—that there is a case or controversy. It is true that the Court's exercise of jurisdiction in such cases is discretionary. *See MedImmune*, 549 U.S. at 136 ("The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so. This text has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.") (quoting 28 U.S.C. § 2201(a)). In exercising its discretion, "[t]he court must make a reasoned judgment whether the investment of time and resources will be worthwhile." *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995).

The Court sees no "well-founded reasons for declining to entertain a declaratory judgment action" in this case. *See Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). Accordingly, the Court **DENIES** Defendant's MTD. (ECF No. 10.)

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's RJN (ECF No. 12-15) and **DENIES** Defendant's MTD (ECF No. 10).

**IT IS SO ORDERED.**

Dated: July 25, 2016

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge