# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FIREGLASS,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>MODERUSTIC INC.,<br><br>　　　　　　　　Defendant. | Case No.: 15-CV-2866 JLS (BGS)<br><br>**ORDER DENYING MOTION TO STRIKE**<br><br>(ECF No. 69) |

Presently before the Court is Defendant Moderustic Inc.'s Motion to Strike Plaintiff's Counter-Counter Claims.[1] ("MTN," ECF No. 69.) Also before the Court are Plaintiff American Fireglass's Opposition to, ("Opp'n," ECF No. 80), and the Defendant's Reply in Support of, ("Reply," ECF No. 82), the Motion. The Court vacated the hearing and took this matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 81.) Having considered the parties' arguments and the law, the Court **DENIES** Defendant's Motion, (ECF No. 69).

/ / /

/ / /

---

[1] Defendant titled its Motion as "Opposed Motion to Strike Defendant's Counter-Counter Claims." The Court assumes this was in error and Defendant does not wish to strike its own counterclaims.

1

# BACKGROUND

Since 2005, Plaintiff has manufactured and sold pieces of broken tempered glass for use in fireplaces and fire pits. ("Compl.," ECF No. 1, ¶¶ 1, 9.) Defendant is Plaintiff's competitor and also sells fireplace and fire pit glass. (*Id.* ¶ 1.)

Defendant's founder, Ed Jaunzemis, filed a patent application seeking to patent a process related to tumbled, polished, vibrated broken tempered glass pieces in 2005. (*Id.* ¶ 10.) In 2011, the U.S. Patent and Trademark Office (PTO) issued U.S. Patent No. 7,976,360 (the "'360 patent"). (*Id.*) After the '360 patent issued, Plaintiff filed an *inter partes* review petition with the PTO. (*Id.*) In 2011, the PTO rejected all of the claims of the '360 patent as obvious in light of prior art. (*Id.*) Defendant has appealed that ruling to the Federal Circuit. (*Id.*) Defendant has also filed other, related patent applications, one of which has been rejected and abandoned, and two of which are pending and awaiting reexamination. (*Id.*)

On July 11, 2011, while the '360 patent was pending, Defendant filed another patent application which was granted, resulting in the issuance of U.S. Patent No. 8,419,505 (the "'505 patent") on April 16, 2013. (*Id.* ¶ 11.) The PTO issued an *ex parte* reexamination certificate of the '505 patent on November 26, 2014, which narrowed the claims to include a method for creating smooth, tempered glass pieces by placing the pieces into a tumbling apparatus and tumbling the fragments for a pre-determined period of time such that the surfaces of the glass fragments are smoother than prior to tumbling and have a substantially rounded, bead-like shape. (*Id.*)

In July 2015, Defendant allegedly filed a complaint, which is not before this Court, for infringement of the '505 patent against various sellers of fireplace glass. Plaintiff goes on to allege that Mr. Jaunzemis has repeatedly threatened to sue Plaintiff and its dealers for infringement of the '505 patent. (*Id.* ¶ 13.) On December 18, 2015, Plaintiff filed its Complaint in this Court, seeking a declaratory judgment of patent invalidity or, alternatively, non-infringement. (*Id.* ¶ 2.) On August 24, 2016, Defendant filed its answer and counterclaims. ("Def. Answer," ECF No. 22.) Defendant denied all allegations in

Plaintiff's Complaint and counterclaimed for infringement of the '505 patent. (*Id.* ¶¶ 12–25.)

Defendant's counterclaim also added causes of action for unfair competition, false advertising, deceptive business practices, and unlawful business practices under both federal and California law. (*See id.* ¶¶ 26–52.) Specifically, Defendant alleges that through Plaintiff's distribution, marketing, promotion, offering for sale, and sale of goods Plaintiff makes various statements that are false descriptions or representations that Plaintiff's products are processed in accordance with Defendant's '505 patent. (*Id.* ¶ 28.) Defendant alleges that as a result of Plaintiff's statements, the public is likely to be misled or confused as to the source, sponsorship, of affiliation of Plaintiff's products with Defendant's product. (*Id.* ¶ 29.)

On September 19, 2016, Plaintiff filed its answer to Defendant's counterclaim. ("Pl. Answer, ECF No. 23.) Plaintiff denied all of Defendant's counterclaims and added two counterclaims in reply: a false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a) and an unfair competition claim under California law, Cal. Bus. & Prof. Code § 17200 et seq. (*Id.* ¶¶ 16–26.) Plaintiff states that its counterclaims in reply arise from Mr. Jaunzemis's repeated contact with Plaintiff, its CEO, and its dealers. And, Plaintiff alleges Mr. Jaunzemis stated to those parties that Defendant would sue its competitors for infringement of the '505 and '360 patents. (*Id.* ¶¶ 11–14.) On October 13, 2017, Defendant filed the present motion to strike Plaintiff's counterclaims in reply, which Defendant labels "counter-counterclaims."

## LEGAL STANDARD

Before reciting the applicable legal standard, the Court must first answer a threshold issue of what Federal Rule of Civil Procedure supplies the basis for Defendant's motion. Defendant titles its motion as a motion to strike. However, in its Reply brief, Defendant

argues that it is not moving under Federal Rule of Civil Procedure 12(f).[2] (Reply 7.)[3] Defendant does not identify the basis for its motion other than stating Federal Rule of Civil Procedure 7 and related case law controls the question at issue. (*Id.*) Rule 7 defines what constitutes a pleading, but does not address counterclaims in reply. Instead, Rule 13 and Ninth Circuit precedent provide the standard for a district court to determine whether to permit a counterclaim. Also relevant, the law governing counterclaims is purely procedural and the Court applies Ninth Circuit precedent, rather than that of the Federal Circuit. *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007).

The Federal Rules of Civil Procedure do not expressly authorize counterclaims in reply, *see* Fed. R. Civ. P. 13, but the Ninth Circuit permits counterclaims in reply if they are compulsory in nature. *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110–11 (9th Cir. 2013) (citing *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1525 (9th Cir. 1985)). A compulsory counterclaim must "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed R. Civ. P. 13(a)(1)(A). District courts apply the "logical relationship test for compulsory counterclaims." *Mattel*, 705 F.3d at 1110 (citing *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195–96 (9th Cir. 2005)). "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Id.* (quoting *Pegasus*, 394 F.3d at 1196; and citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)).

///

---

[2] Indeed, Defendant seems to recognize that if this motion were brought under Rule 12(f) the time to bring the motion has long since passed. Rule 12(f)(2) requires a motion to strike to be brought within twenty-one days after being served with the pleading. Here, Plaintiff served Defendant with its pleading on September 19, 2016. Defendant filed its present Motion on October 13, 2017—more than a year after the pleading.

[3] Pin citations to docketed materials refer to the CM/ECF page numbers electronically stamped at the top of each page.

# ANALYSIS

The Court begins by discussing the operative facts supporting both parties' respective counterclaims. The Court then compares the operative facts to determine whether Plaintiff's counterclaims in reply are compulsory or not.

## I. Defendant's Counterclaims

Defendant's factual allegations underlying its counterclaims focuses on various public statements Plaintiff made about its products. Defendant contends these statements are false. For example, through Plaintiff's distribution, marketing, promotion, offering for sale, and sale of goods Plaintiff claims that its products are "tumbled in order to remove any sharp edges, which makes it very safe to handle." (Def. Answer ¶ 28.) Defendant alleges that those statements were also published to Plaintiff's website. (*See id.*) Defendant then contends that Plaintiff's products infringe on the '505 patent. (*Id.* ¶¶ 12–25.) Thus, according to Defendant, the public will be confused, mistaken, or deceived about Plaintiff's products compared to Defendant's products because those products infringe on the '505 patent. (*Id.* ¶¶ 29–30.) Further, Plaintiff's statements are likely to misappropriate Defendant's business, erode Defendant's prices, and injure Defendant's business reputation and good will. (*Id.* ¶ 32.) Therefore, Defendant brings a Lanham Act claim.

## II. Plaintiff's Counterclaims in Reply

Plaintiff's factual allegations underlying its counterclaims in reply are that Defendant's actions constitute false advertising and unfair competition because Mr. Jaunzemis repeatedly threatened to sue Plaintiff's dealers for patent infringement based on the '505 and '360 patents. (Opp'n 2–3.) For example, Plaintiff's counterclaim alleges:

> In 2015, Mr. Jaunzemis of Moderustic . . . repeatedly contacted American Fireglass and its dealers throughout the United States for allegedly infringing the '505 Patent and the '360 Patent, stating that he has a "legal document" that he would like to "personally" give to the dealers, and threatening to file a complaint for patent infringement against those dealers.

(Pl. Answer ¶ 11.) Plaintiff goes on to allege that Defendant asserts on its website that Defendant obtained the '505 patent and the '360 patent and Defendant will sue its competitors for patent infringement. (*Id.* ¶ 14.) In sum, Plaintiff alleges that Defendant's various deceptive acts have misled and confused Plaintiff's dealers. (*Id.* ¶ 15.)

Thus, Plaintiff argues that its counterclaims in reply are compulsory because the claims arise from the same aggregate set of operative facts surrounding the '505 patent. (Opp'n 2 (citing, e.g., *Mattel*, 705 F.3d at 1110).)

### III. Whether Plaintiff's Counterclaims in Reply Are Compulsory

Plaintiff argues that its counterclaims in reply are compulsory. It also argues that Defendant seemingly admits that the claims are compulsory when Defendant argued in its Motion that "[t]hese facts and allegations form the same basis as both [Plaintiff's] declaratory judgment filed in December 2015 and [Plaintiff's] counter-claims filed September 2016." (*Id.* at 3 (quoting MTN 3–4).)

In response, Defendant argues that the operative facts underlying its counterclaims and Plaintiff's counterclaims in reply are separate and distinct. (Reply 3.) Defendant explains that its counterclaims arise from Plaintiff's false statements to the public. (*Id.*) The facts supporting Defendant's counterclaim include statements by Plaintiff's representatives and on Plaintiff's website, available to the general public. (*Id.* at 3–4.) Defendant contrasts those facts with the facts supporting Plaintiff's counterclaims in reply. Plaintiff's counterclaims relate to statements Defendant made about Defendant's patents to others, including Plaintiff's dealers. (*Id.* at 4.) Those two sets of facts are different; therefore, the claims are not compulsory. (*Id.*)

Defendant then cites *Mattel, Inc. v. MGA Entertainment, Inc.*, as exemplary of the situation here. (*See id.* at 4–5.) In *Mattel*, both parties brought counterclaims based on the same legal theory—the parties stole the other's trade secrets. 705 F.3d at 1110. Yet, the "aggregate core of facts" were not the same. The defendant's counterclaim relied on allegations that the defendant's employees defected to the plaintiff, taking trade secrets with them. *Id.* The plaintiff's counterclaim in reply relied on allegations that defendant's

employees stole plaintiff's trade secret by masquerading as buyers at toy fairs. *Id.* The Ninth Circuit emphasized that "[w]hat matters is not the legal theory but the *facts*. '[E]ven the most liberal construction of ['transaction'] cannot operate to make a counterclaim that arises out of an entirely different or independent transaction or occurrence compulsory under Rule 13(a).'" *Id.* (second and third alterations in original) (quoting 6 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1410, at 52 (3d ed. 2010)).

Here, the legal theory for both Defendant's counterclaim and Plaintiff's counterclaim in reply is a false advertising cause of action. The Court agrees with Defendant that the legal theory alone cannot create the "aggregate core of facts." However, Defendant's reading of the operative facts underlying this case is too narrow. Defendant's counterclaims and Plaintiff's counterclaims in reply share a common fact: whether Plaintiff's products infringe Defendant's '505 patent. Moreover, the patent infringement question is a predicate for both parties' Lanham Act claims. The Court illustrates this by describing the elements for both parties' Lanham Act false advertising claims.

Defendant's second counterclaim and Plaintiff's first counterclaim in reply allege violations of the Lanham Act, 15 U.S.C. § 1125(a). The Court examines the parties' false advertising claims.[4] (Def. Answer ¶¶ 28, 31; Pl. Answer ¶ 17.) The elements of a Lanham Act false advertising claim[5] are:

---

[4] The parties remaining counterclaims derive from the Lanham Act violation. (*See* Def. Answer ¶¶ 33–52; Pl. Answer ¶¶ 22–26.) Thus, if the Lanham Act claims are compulsory then the remaining claims are likewise compulsory.

[5] The parties allege both false advertising and unfair competition under section 43(a) of the Lanham Act. The Court analyzes only false advertising because a successful false advertising claim obviates the need to evaluate both Lanham Act prongs. Lanham Act section 43(a), codified at 15 U.S.C. § 1125(a), provides in pertinent part:
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading representation of fact, which—
> (A) . . .
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990)). "Falsity includes both literally false statements and literally true statements that are likely to mislead or confuse consumers." *Metal Lite, Inc. v. Brady Const. Innovations, Inc.*, 558 F. Supp. 2d 1084, 1093 (C.D. Cal. 2007) (citing *Southland Sod Farms*, 108 F.3d at 1139). "When the statements at issue involve potential infringement of a patent, the statements must have been made in bad faith." *Id.* (citing *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999)).

The allegedly false statement supporting Defendant's false advertising counterclaim is that Plaintiff infringed on the '505 patent. The statements made by Plaintiff on its website to the public were misleading (and can only be misleading) because Plaintiff infringed Defendant's patent. (*See* Def. Answer ¶¶ 15–25.) If Plaintiff did not infringe the '505 patent then Plaintiff's statements are not deceptive. Thus, infringement of the '505 patent is a factual predicate to Defendant's Lanham Act cause of action.

The allegedly false statements supporting Plaintiff's counterclaim in reply is that Mr. Jaunzemis has repeatedly contacted Plaintiff and its dealers "for allegedly infringing the '505 Patent and '360 Patent" and threatened to file a complaint for patent infringement

---

> action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

against those dealers. (Pl. Answer ¶ 11.) Plaintiff also alleges that Defendant's website states Defendant "obtained the '505 patent and the '360 patent, that it will sue its competitors for patent infringement, . . . and that Moderustic would leave 'no stone unturned' in pursuing its patent rights against its competitors." (*Id.* ¶ 14.) Whether Defendant's statements are false depends on whether Plaintiff infringed the '505 patent. If Plaintiff is infringing on the '505 patent then Mr. Jaunzemis's statements are not false. Thus, both parties' Lanham Act claims involve the same "aggregate core of facts": infringement of the '505 patent.

Defendant argues *Mattel* is controlling. It is distinguishable. The *Mattel* court determined that the respective parties' trade secrets claims arose from an independent transaction or occurrence, i.e., each claim relied on distinct facts. *See* 705 F.3d at 1110. Here, the dispositive element is that both parties' counterclaims would not arise but for Plaintiff's alleged infringement of the '505 patent. At trial, both parties would need to prove patent infringement of the '505 patent to prosecute their respective Lanham Act claims. Accordingly, both parties' counterclaims arise from an aggregate set of operative facts and Plaintiff's counterclaims in reply are compulsory.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Motion to Strike, (ECF No. 69).

**IT IS SO ORDERED.**

Dated: April 10, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge