UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FIREGLASS,<br><br>                 Plaintiff,<br><br>v.<br><br>MODERUSTIC, INC.<br><br>                 Defendant. | Case No.: 15CV2866 JLS (BGS)<br><br>**ORDER ON MOTION FOR CLARIFICATION OF ORDER RE DISCOVERY AND CONTINUING MANDATORY SETTLEMENT CONFERENCE**<br><br>[ECF 150, 157] |

This present discovery dispute regards whether Defendant Moderustic, Inc. ("Defendant") is entitled to damages discovery on its remaining counter claims for false advertising. (*See* ECF 145 at 25-26.[1]) For expediency the court will not repeat all the arguments in the parties' joint statement.

In a nutshell, the Court in its Order regarding discovery related to damages, (ECF 88 at 4), found that damages discovery was relevant in a patent litigation such as the present. (*Id.*) And, the Court was inclined to allow limited discovery into this area. (*Id.*)

---

[1] The Court cites the CM/ECF pagination throughout this order unless otherwise indicated.

However, since neither party had addressed the relevancy and proportionality, the Court ordered the parties to meet and confer to attempt to resolve the issues. (*Id.*) The parties were unable to resolve the dispute, so the Court ordered further briefing on the issue. (ECF 96.)

In its motion to compel damages discovery, the Defendant contended that the requested discovery was relevant to the patent-holder's patent infringement claims. (ECF 101 at 2.) The Defendant did not address the relevancy or proportionality of damages discovery as regards its false advertising counter claims. This Court stayed this dispute pending the District Judge's order on the parties' outstanding motions for summary judgment. (ECF 110.)

Now that the Order on those motions has been issued, the Defendant contends that it is entitled to damages discovery on the remaining Lanham Act and UCL counter claims, which allege false advertising by the Plaintiff.[2] The Defendant, in its initial brief regarding damages discovery, (ECF 86), identified the financial information it was requesting as follows: "Moderustic has previously indicated it would accept for RFP #s 8, 15, 27, 28, and 40 the following information for the years of 2015, 2016, 2017: Balance sheets; Income and Expense printouts or QuickBooks spreadsheets with the detail by category; Lines of credit; Credit ratings of AF; Loans to AF; Profit and Loss statements supplied to any bank…." (*Id.* at 5; *see e.g.* ECF 124 at 23.) The Court has reviewed these RFPs and finds that although directed towards patent damages, these RFPs do not foreclose damages discovery on the Lanham Act and California Unfair Competition Law ("UCL") counter claims. Therefore, the Court finds that the Defendant, although limiting its relevancy and proportionality arguments to patent damages discovery, (ECF 101), has not explicitly waived the discovery dispute as to the false advertising counter claims.

---

[2] Since the entire focus of the Defendant's previous requests for financial information had been directed solely to patent infringement damages, the Court initially determined that this discovery dispute was moot.

Notwithstanding, these RFPs that concern financial information are over broad as regards the remaining false advertising counter claims. Significantly, this Court has already narrowed all damages discovery to include only, "…As to the topic of damages, the Court finds that any RFP requests that fall outside of this topic, namely of invoices, profit and loss statements and the like, are outside of this discovery dispute and will not be addressed herein…" (ECF 88.) The District Judge has previously upheld this Court's order. (ECF 143 at 2.) Therefore, the Court will address only this financial discovery as it regards the false advertising counter claims.[3]

Judge Sammartino denied Plaintiff's motion for summary judgement on the counter claims brought by Defendant under the Lanham Act and UCL. She found that those counter claims were brought on grounds that Plaintiff's statements on its website that several of its products were tumbled were false and constituted false advertising. (ECF 145 at 25.) In denying the motion, the Court reasoned that Plaintiff did not dispute that these claims on its website were literally false. (*Id.*)

The Ninth Circuit's Manual of Model Civil Jury Instruction § 15.27 addresses what a plaintiff must prove to receive actual damages pursuant to Title 15 U.S.C. § 1117(a).[4] The considerations include injury to reputation; injury to plaintiff's goodwill; lost profits plaintiff would've earned *but for* defendant's infringement (emphasis added); the expense for preventing customers from being deceived; and the cost of future corrective advertising.

In its section of the joint statement, Defendant has failed to identify what financial information in RFP #s 8, 15, 27, 28, and 40, (ECF 157 at 6 and ECF 86 at 5), is relevant and/or proportional to the actual damages considerations outlined in Instruction 15.27.

---

[3] Defendant repeats many of the discovery requests which were ruled on and confirmed to be outside of the discovery dispute. Therefore, the Court only considers the financial information identified in ECF 157 at 6: 9-15.

[4] Under the UCL only injunctive relief and restitution are available remedies for claims. *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1148 (2003)

3
15CV2866 JLS (BGS)

Defendant contends the financial information is relevant to its counter claims but fails to tie relevancy to any of the factors set forth in Instruction 15.27. (ECF 157 at 9 lines 1-2.) It makes a conclusory statement that its gross sales plummeted when Plaintiff came on the scene with its advertising. But goes on to allege that this is due to Plaintiff underpricing its products. (*Id.* at 9-10.) "One Moderustic client canceled a $26,000 order to go to AF for what he believed was the 'same' product, only cheaper. So, the evidence demonstrates that consumers confuse the products as being the same, and falsely believe that untumbled broken tempered glass is safe." (*Id.* at 10.)

Although the Defendant does not explicitly identify any of the considerations in Instruction 15.27, the Court infers from Defendant's joint statement proffer (above) that Plaintiff's false advertising of products using the word 'tumbled" among other factors such as alleged undercutting of its prices is impacting negatively Defendant's profits. Lost profits is a relevant consideration in determining actual damages. *See e.g.* Instruction 15.27 (3). However, Defendant never indicates specifically what financial information requested in RFP #s 8, 15, 27, 28, and 40 is relevant to proving its lost profits. And significantly, Defendant is only entitled to lost profits financial information from the Plaintiff that were caused by the Plaintiff's use of the word "tumbled" in its advertising. The Court stresses that the alleged falsity of Plaintiff's advertising is the use of the word "tumbled." Therefore, only financial information for products advertised on Plaintiff's website using this word or variation thereof would be relevant to Defendant's Lanham Act actual damages. And, the Court notes that the parties disagree as to which products were advertised using the word "tumbled" and over what time frame. (*See infra* note 5.) Since the Defendant has failed to establish what specific financial information requested in the above identified RFPs is relevant and proportional to the factors listed in Instruction 15.27, and more specifically, to its contention of lost sales, the Court does not order Plaintiff to produce discovery on actual damages as defined in Instruction 15.27.

Notwithstanding, a plaintiff may be entitled to any profits earned by the defendant that are attributable to the infringement (false advertising). The Ninth Circuit's Manual

4

of Model Civil Jury Instruction § 15.29 addresses disgorgement of profits. According to this instruction, profits are determined by deducting all expenses from gross revenue. Gross revenue is all of defendant's receipts from using the trademark (false advertising) in the sale of a product. Plaintiff has the burden of proving gross revenue. Defendant has the burden of proving expenses. (*Id.*)

Based on this instruction, the Court finds that the Defendant is entitled to the gross sales of products that were advertised by the Plaintiff using the word "tumbled" or variation of that word to sell its product(s). (*See* ECF 22, ¶ 28 (Tumbled Statements) and ECF 145 at 25.) Defendant in its RFP 40 does request Plaintiff's sales receipts. The parties disagree as to which products were sold using the word "tumbled" in the advertising on Plaintiff's website and over what time frame that false advertising took place.[5] The Court per this order is requiring the Plaintiff provide to the Defendant in the format ordered herein this discovery for the products sold which were advertised using the word "tumbled" or variation thereof.

Further, if Plaintiff is going to present at trial "expenses" evidence as that term is defined in Instruction 15.29, then Plaintiff must provide all relevant expenses documents as regards the products sold using the word "tumbled" in its advertising thereof. Although overbroad and not explicitly directed to Lanham Act damages, RFP 27 does reference costs of accused products. If Plaintiff so intends, then the parties are to meet and confer as to the documents relevant to this topic as well as the format of production.

---

[5] Defendant makes the broad contention that Plaintiff "has advertised its products were safe to handle and tumbled at all relevant times during this lawsuit." (ECF 157 at 10). Plaintiff strongly contests this allegation, "The only remaining claim in this proceeding is Moderustic's false advertising claim relating to incorrect statements made on American Fireglass' website, namely that certain of its glass products were 'tumbled', which were inadvertently placed on the website from March to August 2016—five months." (*Id.* at 2).

If the parties cannot agree on either, they are to jointly contact the court on **June 11, 2019**.

As regards the format of production of gross sales discovery, Defendant requests that the documents be produced in QuickBooks program. (ECF 157 at 7.) Plaintiff has objected to this format pursuant to Federal Rule of Civil Procedure 34(b)(2)(D). (*Id.* at 4.) Plaintiff has offered to produce the gross sales as detailed in attachment 1 to ECF 157. Defendant objects, requesting the raw data because otherwise Plaintiff could plug any numbers into the chart, there would be no indicia of reliability. (ECF 157 at 8.) The Court notes that the parties in their joint discovery plan had agreed to produce most documents in an electronic format such as PDF or TIFF. (ECF 26 at 5.) The parties reserved the right to demand production in their native format. (*Id.* at 7.) The 2006 Amendment provides that if the parties are unable to resolve the matter by meet and confer, then the Court will resolve the dispute and is not limited to the forms chosen by either party.

In its previous filing regarding this dispute over format, Plaintiff contended it was unable to cull out of its database only the data related to the sale of the accused products. (ECF 102 at 3.) Further, its entire database was full of highly confidential and private financial information of the company that is totally unrelated to the accused products. (*Id.* at 4.) Aside from Defendant's claim that the false advertising was far more extensive than the 5 months claimed by Plaintiff, it appears to the Court as regards the format of production that Defendant's overriding concern has to do with the reliability of the sales information produced. (*See* ECF 157 at 9-10.) The Court believes that the Plaintiff by providing verification under oath as to the accuracy of the data will resolve Defendant's concerns about reliability of the data yet will limit the unnecessary and over burdensome task of Plaintiff trying to provide this information in the requested QuickBooks format. *See* Fed. R. Civ. P. 26(b)(2)(B-C).

Unless the Court grants an extension, all damages discovery as addressed herein must be accomplished by **July 29, 2019**.

The Mandatory Settlement Conference set for July 31, 2019 is **CONTINUED** to **August 30, 2019 at 1:30 p.m.** Any request to reschedule the conference based on conflicts with this date must be raised by motion within ten days of issuance of this Order. In addition to the requirements set forth in the undersigned's Chambers Rules, any such request must include: (1) the specific conflict; (2) when it arose; (3) why it cannot be changed; and (3) alternative dates both before and after the August 31, 2019 date when ALL counsel and parties required to participate in the MSC will be available.

**IT IS SO ORDERED.**

Dated: June 28, 2019

Hon. Bernard G. Skomal
United States Magistrate Judge